UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL DEKEYSER,

    Plaintiff,                        Case No.         -CK
                                                Hon.

v.

HCC LIFE INSURANCE COMPANY,
an Indiana corporation,

    Defendant.
_____/
J.J. CONWAY (P56659)
J.J. CONWAY LAW
Attorneys for Plaintiff
26622 Woodward Ave., Suite 225
Royal Oak, MI 48067
Telephone: 313-961-6525
jj@jjconwaylaw.com
_____/

**PLAINTIFF'S COMPLAINT FOR THE ENFORCEMENT OF HIS RIGHT TO EMPLOYEE BENEFITS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AND JURY DEMAND**

      PLAINTIFF DANIEL DEKEYSER, by his attorneys, J.J. CONWAY LAW, and for his COMPLAINT against the DEFENDANT HCC LIFE INSURANCE COMPANY, and states as follows:

## NATURE OF THE ACTION AND JURISDICTION

1. This is a civil action regarding the breach of the terms of a professional hockey player's occupation-specific and sport disability insurance contract. The purpose of this case is to compel Defendant HCC Life Insurance Company to provide certain long-term disability benefits in the amounts and at the coverage levels promised, as well as for an accounting, and an award of attorney fees and costs incurred as a consequence of Defendant's failure to do so.

2. This Court has federal question jurisdiction pursuant to ERISA Section 502(e)(1), (f), 29 U.S.C. §1132(e)(1), (f), and 28 U.S.C. §2201.

3. Plaintiff has exhausted all required administrative remedies or procedures, or such remedies are futile, or the appeal is "deemed denied" according to U.S. Department of Labor Regulations, specifically, 29 C.F.R. §2560.503-1.

4. Venue is proper in this District since the Defendant's breaches took place in this jurisdiction; Defendant conducts and transacts business in this jurisdiction; and Plaintiff resides within this jurisdiction.

## THE PARTIES

5. Plaintiff Daniel DeKeyser ("Plaintiff" or "DeKeyser") is and was, a professional hockey plan and member of the National Hockey League and the NHL Players Association.

2

6. In 2013, Mr. DeKeyser joined the Detroit Red Wings and played for the team through the 2021-2022 season.

7. By virtue of his membership in the NHL and the NHLPA, Plaintiff was also a "participant" within the meaning of ERISA Section 3(7), 29 U.S.C. §1002(7) in an ERISA qualified welfare benefit plan which provided disability insurance coverage to its player through an ERISA-qualified plan.

8. Plaintiff resides in Wayne County, Michigan.

9. Defendant HCC Life Insurance Company ("Defendant" or "HCC") is an Indiana corporation that is and was, at all relevant times, the claims administrator and insurer of the long-term disability portion of the employee welfare benefit plan ("the Plan") for the National Hockey League Players' Health and Benefit Fund and plan participants such as Plaintiff.

10. Under the terms of the NHL Benefit Plan, Defendant HCC sought the ability to administer the organization's disability insurance program and reserved unto itself full and final administrative responsibilities so that it acted as both the Plan's insurer and Plan's claims "administrator" within the meaning of ERISA Section 3(16), 29 U.S.C. §1002(16)(A)(i).

11. On June 30, 2020, Defendant HCC issued a contract of occupation-specific group disability insurance coverage to National Hockey League Players' Health and Benefit Fund, the terms of which form the basis of this dispute.

12. All documents referenced in this Complaint are in the possession of the Defendant. A copy of the subject HCC Disability Contract is attached as **Exhibit 1**.

## GENERAL ALLEGATIONS

13. Plaintiff realleges all preceding paragraphs.

14. On 2013, Plaintiff, a professional hockey player and member of the NHL Players Association, joined the Detroit Red Wings.

15. On July 26, 2016, Plaintiff entered into a six-year $30 million contract playing as a defenseman for the Detroit Red Wings.

16. On or about October 22, 2019, Plaintiff, while playing hockey, reported an immediate onset of symptoms in the left foot, lower back area and down the leg.

17. In December 2019, Plaintiff was treated by an orthopedic surgeon specializing in the treatment of athletic back injuries.

18. On December 17, 2019, Plaintiff underwent back surgery and he was out for the remainder of the season.

19. A 2019 MRI showed a disc herniation at L5 and Plaintiff underwent a microdiscectomy to L5-S1.

20. The 2019 MRI also showed a lateral foraminal disc herniation at L4-L5.

21. For the 2020-2021 season, Plaintiff returned to play forty-seven games during the 2020-21 season.

22. During the 2021-22 season, Plaintiff played fifty-nine games during the regular season.

23. On March 7, 2022, the NHL training notes reflect that Plaintiff had soreness in the lumbar spine.

24. At that time, Plaintiff briefly went on the injured reserve list and returned to the ice.

25. At the end of the 2021-2022 season, the Detroit Red Wings did not extend Plaintiff's contract.

26. Plaintiff attempted to return to playing professional hockey prior in the next regular season but owing to the functional restrictions and limitations stemming from his lower back injuries and worsening medical condition, he was unable to return to playing professional hockey.

27. By August 11, 2022, Plaintiff's career as a professional hockey player ended owing to his lower back condition and any subsequent attempts at playing were thwarted by his medical condition.

28. Plaintiff was evaluated by treaters in October 2022, and in his training records, it is reported that Plaintiff had suffered with worsening lower back pain for 3 years since his 2019 surgery.

29. A follow up MRI from February 9, 2023 was taken and demonstrated progression of the L4-L5 disc causing significant nerve compression as well as L5-S1 scar tissue with residual compression of the nerve root in a pincer-type effect between the facet joints and the disc.

30. This MRI reading is consistent with the sickness known as degenerative disc disease.

31. On February 13, 2023, Plaintiff's treating physician stated that, "I do not believe that the patient can play professional hockey at this time secondary to foot drop, herniated disc and residual pain, numbness and tingling."

32. Plaintiff suffered a re-injury to his back while his contract was in force and also experienced degenerative disc disease and spinal stenosis in the aftermath.

33. Both medical causes of disability are covered by Plaintiff's contract.

34. Both degenerative disc disease and spinal stenosis are chronic maladies in need of medical attention for which Plaintiff has been and is being treated.

35. After Plaintiff filed his claim for disability income replacement benefits, Defendant assigned the claims handling to HCC Specialty Underwriters, Inc. which also happens to be affiliated with HCC Life Insurance Company.

36. The benefit plan provides for a lump sum benefit of $680,000 upon proof that a participant, like Plaintiff, is permanent unable to play professional hockey as certified by a physician.

37. The contract contained a 12-month Waiting Period measured from the day of the claim's onset and for one year after.

38. The contract also contained a rehabilitation clause or relapse clause which stated that a Waiting Period was deemed uninterrupted unless a player returned to play 41 games during a regular season.

39. After Plaintiff filed his claim for disability income replacement benefits, Defendant HCC assigned the claims handling to HCC Specialty Underwriters which is both an administrator of other insurance claims and also affiliated with HCC Life Insurers which provided the coverage here.

40. For a period of nearly two years, Plaintiff and HCC began a period of correspondence and documentation requests.

41. The period was excessively long and each new delivery of requested medical information was followed by new and different demands made by HCC and then eventually its lawyers.

42. Plaintiff dutifully complied with each new request for information.

43. Defendant failed to reach a decision on either.

44. Eventually, Plaintiff requested that HCC reach a decision – either approve or deny – by July 4, 2024.

45. Defendant refused.

46. As of this filing, after nearly two years of claims processing, Defendant has not made a decision on the Plaintiff's claim.

47. Defendant has not supplied Plaintiff with a statement of his ERISA rights in any correspondence regarding this claim.

48. By law, the claims are deemed denied, and Plaintiff may move to enforce his right under his long-term disability income replacement contract.

49. Plaintiff may also enforce his rights to coverage under the terms of his ERISA contract.

50. There appears to be no dispute that Plaintiff's medical condition did, in fact, render him "totally and permanently disabled" as that term is defined in his long-term disability insurance contract.

51. Defendant's decision to not approve benefits is wrong, incorrect, and unreasonable.

52. Defendant's decision was based on the alleged opinions of file reviewers who allegedly reviewed Plaintiff's medical files.

53. Defendant's file reviewers did not personally examine or interview Plaintiff, yet the claim was not approved.

54. Based on the medical and non-medical evidence of this claim, this is not true and constitutes a breach of Plaintiff's disability contract.

55. Plaintiff has fully paid all premiums for coverage.

56. Plaintiff satisfied all proof demands made by Defendants.

57. Under the terms of his contract, Plaintiff is eligible for long-term disability benefits upon submitting proof of Permanent "Total Disability" which the contract states its insuring obligation as follows:

> The Company (Defendant HCC) will pay the Permanent Total Disability Amount stated in Schedule I, if:
>
> (1) An Insured has a Total Disability which begins during the Coverage Period and continues without interruption for the entire Waiting Period;
>
> and
>
> (2) The Insured is under the regular care of a Physician throughout the duration of the Total Disability unless continued treatment would be of no benefit to the Insured;
>
> and
>
> (3) The Total Disability is determined by a Physician to be of continuous and indefinite duration and to prevent the Insured from ever again engaging in the Occupation;
>
> and
>
> (4) The Insured is living or was alive on the date items 1, 2 and 3 able are satisfied;

9

58. The contract contains the following additional terms and definitions, "Occupation means the occupation shown in the policy schedule" which is listed as a Professional Hockey Player.

59. The contract contains a 12-month waiting period which ran from August 11, 2022 through August 11, 2023, thereby rendering Plaintiff eligible for full benefits.

60. After which, the Plaintiff satisfied each and every condition listed above in paragraph 5.

61. Plaintiff has never returned to playing professional hockey as a result of his medical condition and will never do so.

62. Despite this, Defendant HCC has ignored applicable contract language in order to deny the claim on a self-interested basis, thereby breaching the disability contract.

63. Plaintiff supplied Defendant HCC with adequate and substantial continuing proof of loss as well as arguments supporting the proper contractual interpretation of the Defendant's coverage provisions.

64. Under the terms of the policy, Plaintiff is entitled to payment of his lump sum coverage amount which Defendant HCC has refused to pay.

65. Upon information and belief, the monetary value of Plaintiff's claim played a significant role in the wrongful denial termination of Plaintiff's claim.

66. Upon information and belief, the independence of HCC Specialty Underwriters was comprised as it was enlisted to adjust another claim filed by Plaintiff with another insurer under a non-ERISA contract.

67. Defendant HCC is a fiduciary under ERISA and must abide by the statute's expressly defined fiduciary duties.

68. Defendant HCC, as a fiduciary, has violated both the claim and appeal process and violated every right permitted to participants, like Plaintiff, under ERISA to have a full and fair review of their claims by appropriate fiduciaries who interpret plan provisions for the "exclusive benefit of Plan participants" as is required by ERISA under ERISA Section 503, 29 U.S.C. §1133.

69. Additionally, Mich. Admin. Codes §500.2201, §500-2202, §550.111, and §550.112 apply the resolution of this case.

## COUNT I
## ACTION UNDER ERISA SECTION 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) TO RECOVER FULL EMPLOYEE BENEFITS AGAINST DEFENDANT HCC LIFE INSURANCE COMPANY

70. Plaintiff realleges all preceding paragraphs.

71. ERISA imposes higher-than-marketplace quality standards on insurers, requiring a plan administrator to "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the [plan's] participants and

11

beneficiaries," 29 U.S.C. § 1104(a)(1). *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008).

72. The Supreme Court has stated that ERISA underscore[es] the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials." *Id.*

73. Defendant provided group long-term disability insurance to an employee welfare benefit plan in which the Plaintiff participated and was established for Plaintiff's benefit.

74. Plaintiff was fully vested and entitled to full benefits thereunder and all premiums for coverage had been paid.

75. Plaintiff is and was totally disabled and eligible for disability benefits under the contract and the terms of the Plan.

76. Defendant has failed to properly interpret its own Plan such that Plaintiff has somehow been found ineligible for the payment and/or continuation of certain disability benefits, despite meeting the Plan's eligibility requirements.

77. Plaintiff made attempts to redress this violation of Plaintiff's rights, by among other things:

    a. Filing timely claims and repeatedly responding with supportive evidence to the Defendant's denial of benefits correspondence;

    b. Submitting multiple forms of written proof of loss to secure the prelitigation payment of disability benefits; and

    c.    Through counsel, writing the Defendants and Plan that the claim be approved for disability benefits and avoid expensive and protracted federal court litigation.

78. Defendant HCC has erred in denying Plaintiff's claim for disability insurance benefits and Defendant's actions violate well-settled ERISA case law concerning the proper administration of employee benefits.

79. Defendant's actions also violate its duty to review Plaintiff's claim for "the exclusive purpose of providing benefits to the plan participants," not for its own financial profit motivations.

80. Defendant has also violated ERISA and the terms of the Plan by failing to issue any ERISA-compliant communications regarding its handling of this claim and any decisions it has made regarding Plaintiff's claim for benefits.

81. As a result of the foregoing, Plaintiff is entitled to the following:

    a.    Full past due disability benefits; and

    b.    Any future disability benefits.

WHEREFORE, Plaintiff requests entry of a judgment against Defendants adjudging that Plaintiff is entitled to full disability benefits, disgorgement of ill-gotten profits under ERISA §502(a)(3), all other damages, interest, attorney fees, and all other appropriate relief to which this Court deems just.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests:

1. An Order compelling the responsible Defendant to pay Plaintiff forthwith the full amount of past due disability insurance benefits due and to continue such payments for the period set forth in the contract, including interest on all unpaid benefits; and all such other legal or equitable relief as may be just and appropriate;

2. Disgorgement of ill-gotten profits because of Defendant's retention of benefits owed pursuant to ERISA Section 502(a)(3) or under any other applicable statutory provisions; and

3. An award of reasonable attorney fees and costs pursuant to ERISA Section 502(g)(1), 29 U.S.C. §1132(g)(1) for having to bring this claim.

Respectfully submitted,

**J.J. CONWAY LAW**
Attorneys for Plaintiff

By:  /s/John J. Conway
John J. Conway
26622 Woodward Ave., Suite 225
Royal Oak, Michigan 48067
(313) 961-6525
jj@jjconwaylaw.com
P56659

Dated: August 5, 2024

## JURY DEMAND

Plaintiff hereby demands trial by jury according to his Seventh Amendment Right contained within the United States Constitution.

                                                       Respectfully submitted,

                                                       **J.J. CONWAY LAW**
                                                       Attorneys for Plaintiff

                By:    /s/John J. Conway
                          John J. Conway
                          26622 Woodward Ave., Suite 225
                          Royal Oak, Michigan 48067
                          (313) 961-6525
                          jj@jjconwaylaw.com
                          P56659

Dated: August 5, 2024